UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA J. FIELDS,

    Plaintiff,
                                        Case No. 17-cv-11812
                                        Hon. Matthew F. Leitman
v.

PIERRE OCTAVIUS ASHFORD, *et al.*,

    Defendants.

_____/

## **ORDER DENYING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 89)**

This diversity action arises out of an automobile accident between Plaintiff Angela Fields and Defendant Pierre Octavius Ashford that occurred on I-96 in Milford, Michigan. Fields' Ford Edge crashed into the back of Ashford's semi-truck shortly after Ashford pulled his truck from the shoulder into Fields' lane of travel. Fields brings a negligence claim against Ashford and a vicarious liability claim against Defendants Corr Transport, Inc. and Dakota Lines, Inc., the owners of Ashford's truck. Defendants have now moved for summary judgment. (*See* Mot. for Summ. J., ECF No. 89.) For the reasons stated below, the motion is **DENIED**.

I

At approximately 6:00 p.m. on May 25, 2016, Fields was driving home from work in the right lane of I-96. (*See* Fields Dep. at 41-42, ECF No. 89-3,

1

PageID.2690.) Fields was driving at approximately 70 miles per hour. (*See id*. at 43-44, PageID.2690.) As Fields drove through Milford, Michigan, she saw a semi-truck in motion on the right shoulder of the freeway. (*See id.* at 46-47, PageID.2691.) That semi-truck was driven by Ashford. Fields assumed that Ashford was "going to wait until [she] pass[ed]" before merging onto the highway because it was her experience that semi-trucks "merge behind you." (*Id.* at 51-52, PageID.2692.)

But Ashford did not merge behind Fields. Instead, according to Fields, Ashford's truck "jumped in front of [her]" without warning and without giving her "a chance to react." (*Id.* at 52, PageID.2692.) Fields then crashed her Ford Edge directly into the back of Ashford's tractor-trailer. Fields does not remember the impact of the crash. (*See id.*) Nor does she remember seeing Ashford merge into her lane. (*See id.* at 48, PageID.2691.) What Fields remembers is that the truck "seemed like [it] had [its] own lane … and the next thing [she knew] it was [right] in front of [her]." (*Id.*)

Ashford denies that he merged in a manner that left Fields insufficient time to react or to avoid colliding with him. Ashford says that he began the merge process by driving on the shoulder to build up speed. (*See* Ashford Dep. at 43, ECF No. 89-2, PageID.2667.) As he drove on the shoulder, he looked in his rear-view mirrors and determined that traffic was clear enough to permit him to merge safely. (*See id.* at 46-47, PageID.2668.) Ashford did see what turned out to be Fields' vehicle

2

traveling in the right lane (into which he would be merging), but he concluded that the vehicle was "pretty far back" and that he had "plenty enough room" and time to merge into the right lane. (*Id.* at 47, 72, PageID.2668, 2674.) Ashford eventually completed the merge and became fully "established in [the right] lane." (*Id.* at 78, PageID.2676.) Ashford insists that as he was driving in that lane, he took "multiple" looks at Fields' approaching vehicle in his rear-view mirror. (*Id.* at 51, PageID.2669.) Eventually, Fields' car "disappeared" from Ashford's view and crashed into the rear of the trailer he was pulling. (*Id.*)

Fields suffered several serious injuries as a result of the crash. She underwent surgeries for a broken leg and broken elbow, fractured "four or five" of her ribs, and injured her ankle and shoulder, among other injuries. (Fields Dep. at 72-76, ECF No. 89-3, PageID.2698.)

**II**

Fields filed this action in the Oakland County Circuit Court on May 10, 2017. (*See* Compl. ECF No. 1, PageID.9-21.) Fields named Ashford as a defendant, and she also brought suit against Corr Transport and Dakota Lines, the entities that owned the truck Ashford was driving. (*See id.* at ¶12, PageID.11.) On June 8, 2017, Defendants removed the action to this Court. (*See* Notice of Removal, ECF No. 1.)

In the Complaint, Fields alleges that Ashford "recklessly, carelessly and negligently attempted to merge into the lane in which [Fields] was driving with the

right of way causing a collision." (Compl. at ¶12, ECF No. 1, PageID.11.) And she seeks to hold Corr Transport and Dakota Lines liable for her injuries based on a theory of vicarious liability. (*See id.* at ¶13, PageID.12.) Defendants counter that they have no liability because the accident was caused, at least in part, by Fields' "distracted" driving. (Mot. for Summ. J., ECF No. 89, PageID.2620.)

### III

On November 12, 2019, Defendants moved for summary judgment on Fields' claims. (*See* Mot. for Summ. J., ECF No. 89.) Fields filed her response to the motion on December 18, 2019, and Defendants have filed a reply. (*See* Fields Resp. Br., ECF No. 91; Defs.' Reply Br., ECF No. 92.) The Court thereafter informed the parties that pursuant to Local Rule 7.1(f)(2), Defendants' motion would be resolved without oral argument. (*See* Notice, ECF No. 93.)

### IV

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position

will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

V

A

The parties agree that in this diversity action, Michigan law, as determined by the Michigan Supreme Court, governs Fields' negligence claim. (*See* Mot. for Summ. J., ECF No. 89, PageID.2627; Fields Resp. Br., ECF No. 91, PageID.2878; *see also Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).) Under Michigan law, in order to "establish a *prima facie* case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000).

B

Defendants present several arguments in support of their motion for summary judgment. The Court will address each argument in turn below. None of Defendants' arguments persuade the Court that they are entitled to judgment as a matter of law on the current record.

**1**

Defendants first argue that they are entitled to summary judgment because Fields is presumptively negligent under Michigan law. (*See* Mot. for Summ. J., ECF No. 89, PageID.2627-2629.) Defendants rely upon Mich. Comp. Laws § 257.402. That statute provides that where a driver rear-ends another vehicle, the driver is presumed to have been negligent:

> In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator.

Mich. Comp. Laws § 257.402(a).[1]

---

[1] Defendants also rely upon the "clear distance" rule described in Mich. Comp. Laws § 257.627. That statute provides that: "A person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead." Mich. Comp. Laws § 257.627(1). Defendants insist that a violation of this statute "constitutes negligence *per se*." (Mot. for Summ. J., ECF No. 89, PageID.2628.) The analysis for an alleged violation of Section 257.627(1) is "virtually identical" to the analysis for an alleged Section 402(a) violation. *White v. Taylor Distributing Co., Inc.*, 753 N.W.2d 591, 593 n.3 (Mich. 2008). Thus, for the same reasons described above that a "sudden emergency" may overcome the presumption of negligence under Section 402(a), a sudden emergency may also overcome a finding of negligence *per se* under Section 257.627(1). *See, e.g., Vander Laan v. Miedema*, 188 N.W.2d 564, 566-67 (Mich. 1971).

But as Defendants' acknowledge, "[t]he presumption established by [Mich. Comp. Laws §] 257.402 is a rebuttable one." (Mot. for Summ. J., ECF No. 89, PageID.2628, citing *Lucas v. Carson*, 196 N.W.2d 819 (Mich. Ct. App. 1972).) And it is well established that the presumption is rebutted where there is a "sudden emergency." *Lucas*, 196 N.W.2d at 822. *See also White v. Taylor Distributing Co., Inc.*, 753 N.W.2d 591, 593 (Mich. 2008) ("The statutory presumption of negligence under MCL 257.402(a) may be rebutted by showing the existence of a sudden emergency"). "The sudden-emergency doctrine applies when a collision is shown to have occurred as the result of a sudden emergency not of [a party's] own making." *White*, 753 N.W.2d at 593 (internal quotation marks omitted).

Fields' testimony, when construed in her favor, is that the collision occurred "as a result of a sudden emergency not of [her] own making" – namely Ashford "jumping" in front of her into her lane of travel without leaving her any time to react to his merge. Because a jury could reasonably credit Fields' testimony that there was a sudden emergency, caused by Ashford, that left her no time to avoid the crash, Defendants are not entitled to summary judgment on the basis that Fields is presumed negligent as a matter of Michigan law.

Defendants counter by citing to a portion of Fields' deposition where she acknowledged, twice, that she did not see Ashford merge into her lane. (*See* Fields Dep. at 48, 52, ECF No. 89-3, PageID.2692-2693.) Defendants insist that because

Fields did not see Ashford's merge, she cannot establish that the manner in which Ashford merged created a sudden emergency that caused the crash. (*See* Defs.' Reply Br., ECF No. 92, PageID.3090-3091.)

Defendants' argument is a serious one. Because Fields testified that she did not see the merge, she may have a very difficult time establishing at trial that there was a sudden emergency not of her own making. Moreover, there are reasons to doubt Fields' testimony that she did not see Ashford's 74,000-pound semi-truck merging into her lane of traffic on a flat stretch of highway in broad daylight.

However, Fields' testimony that she did not see Ashford's truck merge into her lane is not completely irreconcilable with her testimony that Ashford's truck "jumped" in front of her without warning. When Fields' testimony, as a whole, is construed in her favor, that testimony could be understood as Fields saying that the merge happened so quickly that she was unable to perceive it even though she was watching the road in front of her. At this point and on this record, the Court cannot say, as a matter of law, that Fields' testimony that Ashford's truck merged too quickly to be perceived (as she traveled at 70 miles per hour) is so incredible and unbelievable that no reasonable jury could accept it.

Nor is the report of the Defendants' accident reconstruction expert, James Hrycay, so compelling that it would require a factfinder to reject Fields' version of events. (*See* Hrycay Rpt., ECF No. 89-4.) Hrycay concluded that the crash was not

8

"caused by Mr. Ashford entering the right lane in front of Ms. Fields." (*Id.*, PageID.2727.) Instead, Hrycay found that "[a]n alert motorist in [Fields'] position would have been able to [avoid the collision] if she observed and reacted to the leftward movement of the tractor-trailer, or the presence of the tractor-trailer in the lane ahead of her in the daylight conditions." (*Id.*, PageID.2728.) Hrycay further explained that "Fields' description of the tractor-trailer jumping out in front of her is inconsistent with how a tractor-trailer changes lanes." (*Id.*, PageID.2725.)

Hrycay's report does not conclusively establish, as a matter of law, that a there was not a sudden emergency and that Fields is thus responsible for the accident. For example, Hrycay reaches his conclusions based, in part, on a "position-time history" of the vehicles. (*Id.*, PageID.2725-2726.) But Hrycay says that that history reflects only the "likely" position and speed of the vehicles at impact; he does not reach a definitive conclusion on this point (*Id.*) Moreover, Hrycay calls into question Ashford's version of events on the critical question of how long it took Ashford to merge onto the highway (and, thus, how much time Fields would have had to see Ashford's truck before crashing into it). Ashford testified at his deposition that it was "maybe a minute" between the time he began to merge and the moment of impact. (Ashford Dep. at 82-83, ECF No. 89-2, PageID.2677.) But Hrycay noted that a minute "is much too long for a normal lane change and it is very likely that [Ashford] was mistaken about the length of time it took to [change lanes]; it was

9

likely far less [than a minute]." (Hrycay Rpt., ECF No. 89-4, PageID.2725.) Hrycay's finding that Ashford's testimony on this important point may be in error adds uncertainty to the record, and that uncertainty further counsels against granting summary judgment in favor of Ashford and the other Defendants. For all of these reasons, Hrycay's expert report does not require the Court to reject Fields' version of events as so implausible as a matter of law that Defendants are entitled to summary judgment.

## 2

Defendants next argue that Fields cannot establish the required causation element of her negligence claim. (*See* Mot. for Summ. J., ECF No. 89, PageID.2629-2936.) They insist that Fields "has failed to provide admissible evidence to support her contention that [Ashford] 'cut her off.'" (*Id.*, PageID.2633.) But for all of the reasons stated above, on this record, Fields has presented such evidence – her deposition testimony that Ashford merged in front of her so quickly that she did not see his truck until it was too late to avoid the accident. And while, again, there are several reasons why a jury may choose to discount that testimony, the Court cannot say as a matter of law that Fields has failed to present sufficient evidence to establish the causation element of her claim.

**3**

Finally, Defendants argue that they are entitled to summary judgment because Fields was more than 50-percent at fault for the accident, and, under Michigan law, "damages shall not be assessed in favor of a party who is more than 50% at fault." (*Id.*, PageID.2636-2637, quoting Mich. Comp. Laws § 500.3135(2)(b).) However, as explained in detail above, if a jury were to accept Fields' testimony about how the accident occurred, the jury could find that that she was not more than 50-percent at fault for the crash. Simply put, on this record, the Court cannot say that Fields' version of events is so implausible that, as a matter of law, she is more than 50-percent at fault for the accident.

For all of these reasons, Defendants are not entitled to summary judgment.

**V**

Before concluding, the Court feels compelled to respond to one point that Fields makes in her response to Defendants' motion. Fields says that "[i]t is unfathomable why the Defendants continue to maintain Defendant Ashford is not completely at fault for this tragic collision." (Fields Resp. Br., ECF No. 91, PageID.2875.) It is not unfathomable at all. There are many reasons to doubt Fields' version of events and to conclude that her distracted driving, not Ashford's negligence, caused this accident. Indeed, the idea that Fields did not see Ashford's fully-loaded, 74,000-plus-pound pickup truck merge into her lane of traffic as it

lumbered along at 30-to-35 miles-per-hour on a clear day seems to contradict common sense. It seems quite possible, if not likely, that a jury will conclude that semi-trucks like the one driven by Ashford do not "jump" – in any sense of the word, not even figuratively – from one lane fully into another lane. A finding against Fields may be even more likely given that the Defendants will be able to present expert testimony in support of their theory that Fields caused the accident while Fields' theory will not have such support (because the Court excluded her proffered expert as unreliable).

On the other hand, Defendants should not be overconfident heading into trial. They face the risk that Fields will be able to exploit inconsistencies between Ashford's testimony and Hrycay's opinions, and if the jury finds for Fields, the verdict will likely be a large one. And it is possible that the jurors will conclude that a semi-truck can merge so quickly that a reasonable driver would not see it until it was too late. Victory for the Defendants far from assured.

The Court makes these observations to encourage the parties to take a critical look at their own positions at this point in the litigation. The Court will now refer this matter for a settlement conference before Senior United States District Judge Bernard A. Friedman, a former Chief Judge of this Court. Judge Friedman will schedule the conference once the COVID-19 crisis abates. The Court expects both parties to candidly assess the strengths and weaknesses of their respective cases prior

to attending the settlement conference with Judge Friedman and to work vigorously and in good faith to reach a settlement at the conference, if possible.

## VI

For all of the reasons stated above, Defendants' motion for summary judgment (ECF No. 89) is **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: April 8, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 8, 2020, by electronic means and/or ordinary mail.

s/ Holly A. Monda
Case Manager
(810) 341-9764