UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA J. FIELDS,

    Plaintiff,

v.

PIERRE OCTAVIUS ASHFORD, *et al.*,

    Defendants.

Case No. 17-cv-11812
Hon. Matthew F. Leitman

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE THE EXPERT OPINION TESTIMONY OF RONALD SMOLARSKI (ECF No. 150)**

Now before the Court is a motion by Defendants Pierre Octavius Ashford, Corr Transport, Inc., and Dakota Lines, Inc. to exclude the expert opinion testimony of Ronald Smolarski. (*See* Mot., ECF No. 150.) For the reasons explained below, the motion is **GRANTED** in part and **DENIED** in part.[1]

**I**

**A**

This diversity action arises out of an automobile accident involving Plaintiff Angela Fields and Defendant Ashford that occurred on I-96 in Milford, Michigan. On May 25, 2016, Fields' Ford Edge crashed into the back of Ashford's semi-truck shortly

---

[1] The Court concludes that it may resolve this motion without oral argument. *See* E.D. Mich. Local Rule 7.1(f)(2).

1

after Ashford pulled his truck into Fields' lane of travel from the shoulder of the highway.  Fields now brings a negligence claim against Ashford and a vicarious liability claim against Corr Transport and Dakota Lines, the owners of Ashford's truck. (*See* Compl., ECF No. 1, PageID.9-21.)

**B**

As this action proceeded, the Court entered three Case Management Orders setting the deadlines by which each party was required to disclose the expert witnesses they intended to rely on under Federal Rule of Civil Procedure 26.  The Court's first Case Management Order set that deadline as March 28, 2018. (*See* Case Man. Order, ECF No. 25, PageID.191.)  The Court later extended that deadline to April 11, 2018.[2] (*See* Scheduling Order, ECF No. 33, PageID.257.)

The Court's Case Management Orders also set deadlines for the conclusion of fact and expert discovery.  The final deadline for the completion of fact discovery was April 6, 2018, (*see* Scheduling Order, ECF No. 33, PageID.257), and the final deadline for the completion of expert discovery was January 19, 2019. (*See* Case Man. Order, ECF No. 69, PageID.1494.)

---

[2] For a narrow set of physician witnesses, the Court extended the deadline for expert disclosures until September 10, 2018. (*See* Order, ECF No. 69, PageID.1494.)  That narrow extension is not relevant to the issues addressed in this order.

In compliance with the Court's orders, Fields timely disclosed Robert Ancell, Ph.D., as an expert vocational witness and timely served on Defendants a "Vocational Rehabilitation Evaluation" prepared by Dr. Ancell. (*See* Ancell Report, ECF No. 150-1, PageID.4283).  In that report, Dr. Ancell opined that: "From a vocational rehabilitation standpoint, Ms. Fields has sustained very significant vocationally limiting problems…She has not been released to work and is currently totally unemployable." (*Id.*, PageID.4287.)  Fields planned to have Dr. Ancell offer that opinion at trial. However, while the parties were preparing for trial, Dr. Ancell passed away. (*See* Mot. at ¶¶ 3-4, ECF No. 116, PageID.3518.)

On April 8, 2022, Fields filed a motion to amend her witness list "to name a new vocational rehabilitation expert." (Mot. at ¶ 5, ECF No. 116, PageID.3518.)  The Court granted Fields' motion and authorized her to "retain a new vocational expert to replace Dr. Ancell." (Order, ECF No. 131, PageID.4050.)  The Court required Fields to provide Defendants with a report from her new vocational expert and to make the new expert available for a deposition. (*See id.*)

## C

Pursuant to the Court's order, Fields retained Ronald Smolarski to replace Dr. Ancell as her vocational rehabilitation expert.  Smolarski is a certified rehabilitation counselor and vocational evaluator who has testified as an expert witness in "hundreds" of trials in Michigan on topics related to vocational rehabilitation. (*See* Smolarski C.V., ECF No. 151-3, PageID.4407-4408.) He has over 40 years of professional experience

3

in the field of vocational rehabilitation, and he currently serves as the director of Beacon Rehabilitation Services, Inc., an organization he founded to offer "medical case management, economic and vocational rehabilitation" to injured and disabled clients. (*Id.*) Fields timely provided Defendants with Smolarski's expert report, and he was deposed on May 31, 2022.

Smolarski's expert report is divided into three sections: a "vocational assessment," a "functional/work capacity evaluation," and an "economic damages evaluation." (*See* Smolarski Report, ECF No. 150-2.) In the "vocational assessment" section of his report, Smolarski opines on Fields' ability to access the labor market post-injury. (*See id.*, PageID.4315.) Like Dr. Ancell, Smolarski concluded that Fields "has access to 0 occupations[.]" (*Id.*) In reaching this conclusion, Smolarski primarily relied on two considerations: Fields' cognitive/psychological impairments and her physical limitations. (*See id.*, PageID.4307-4315.) His assessment of her cognitive and psychological impairments was based on a series of aptitude tests that he administered. (*See id.*, PageID.4312.) His analysis of her physical limitations rested on two sets of data: (1) information provided by one of her treating physicians in response to a short questionnaire and (2) her performance on a number of tests (described in more detail below) that Smolarksi administered to her as part of his "functional/work capacity evaluation." (*See id.*, PageID.4314.) Notably, Smolarksi explained that the tests administered during the "functional/work capacity evaluation" provided some of the

4

"foundation" for his opinions concerning Fields' vocational capabilities. (*Id.*, PageID.4321.)

In the "functional/work capacity evaluation" part of his report, Smolarski explained the results of a series of physical tests that he administered to Fields in order to assess traits like manual dexterity, finger dexterity, motor coordination, and her ability to use specific tools. (*See id.*, PageID.4323.) Based on these tests, Smolarski concluded that: "Fields's vocational pursuits should concentrate on a noncompetitive job requiring manual and fine finger dexterity as well as motor coordination, lifting up to 10 pounds at less than full range of motion, with a sit-stand option to be able to work at a sustained rate at part-time [15 hours per week] at noncompetitive work." (*Id.*, PageID.4327.)

Finally, in the "economic damages evaluation" section of his report, Smolarski opined on the total economic damage that Fields suffered as a result of her injuries. (*Id.*, PageID.4320-4344.)

During his deposition, Smolarski confirmed his intention to offer opinion testimony at trial tracking all three sections of his report. (*See* Smolarski Dep., ECF No. 150-3, PageID.4350.)

**D**

On June 29, 2022, Defendants moved to exclude Smolarski's testimony on two grounds. First, Defendants argue that Smolarski's testimony should be excluded in its entirety under Federal Rule of Evidence 702 because it is not based upon sufficient facts

5

or data, is not the product of reliable principles and methods, and is unnecessary to the jury's determination of any material fact. (*See* Mot., ECF No. 150, PageID.4267.) Second (and in the alternative), Defendants argue that, if the Court does not exclude all of Smolarski's testimony under FRE 702, the Court should at least exclude Smolarski's opinion testimony about Fields' "functional/work capacity" and her "economic damages" because (1) the Court authorized Fields to call Smolarski for the limited purpose of replacing Dr. Ancell's testimony and (2) these opinions far exceed the scope of Dr. Ancell's vocational rehabilitation opinions. (*See id.*, PageID.4276-4278.) Defendants further argue that these opinions should also be excluded because Fields failed to timely disclose them. (*See id.*)

## II

The Court first turns to Defendants' more narrow contention that the Court should exclude Smolarski's opinions concerning Fields' "functional/work capacity" and her "economic damages" because those opinions exceed the scope of Dr. Ancell's expert report and were not timely disclosed. For the reasons explained below, the Court agrees that Smolarski's economic damages opinions should be excluded on these grounds, but the Court concludes that his functional/work capacity opinions should not be excluded.

## A

The disclosure of expert opinion witnesses and the subject of expert testimony is governed by Federal Rule of Civil Procedure 26(a)(2). That rule provides, in relevant part, that "[i]n addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). The rule further provides that a witness who is "retained or specifically employed to provide expert testimony" must provide a "written report" containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

Rule 26(a)(2)(D) authorizes a district court to enter an order setting the time by which each party must make their required disclosures of expert opinion witnesses. *See* Fed. R. Civ. P. 26(a)(2)(D). As noted above, this Court required the parties to make their Rule 26(a)(2) disclosures by April 11, 2018. (*See* Scheduling Order, ECF No. 33, PageID.257.)

"If a party fails to provide information or identify a witness as required by Rule 26(a) ... the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). While a Court may issue a lesser sanction, "exclusion of late or undisclosed evidence is the usual remedy for noncompliance with Rule 26(a)." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015).

When determining whether a party's failure to make a disclosure required under Rule 26(a) was harmless or substantially justified, the Court considers the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 748. The proponent of the late-disclosed evidence has the burden to demonstrate that their flawed disclosure was harmless or substantially justified. *See Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

**B**

It is undisputed that Fields did not timely disclose that any expert witness would be offering any opinions concerning economic damages. Those opinions first appeared in Smolarski's report, which was served long after the deadline for disclosing expert testimony, and long after the close of fact and expert discovery. Because Fields did not timely disclose that any expert witness would be opining on the economic damages she suffered, she may offer those opinions at trial only if she shows that her failure to disclose was harmless or substantially justified.

Fields has not even attempted to make the required showing of harmlessness or substantial justification. Indeed, her response to Defendants' motion neither mentions nor applies the "harmless or substantially justified" standard. Likewise, she does not

8

explain how the five *Howe* factors identified above apply to her failure to timely disclose Smolarski's expert opinion on economic damages. Nor can Fields reasonably claim that this testimony merely replaces the testimony that Dr. Ancell would have given, as Dr. Ancell never purported to opine on any question of economic damages. Because Fields has not carried her burden to show that her failure to timely disclose this expert opinion on economic damages was harmless or substantially justified, the Court will exclude Smolarski's opinions on that subject pursuant to Rule 37(c)(1).[3]

## C

However, the Court reaches a different result with respect to Smolarski's functional/work evaluation opinions. The Court views these opinions as part and parcel of the vocational rehabilitation opinions that the Court specifically authorized

---

[3] Although it is not required to do so, the Court has proceeded to apply the *Howe* factors and has independently determined that the balance of the factors weighs against a finding that Fields' failure to timely disclose Smolarski's expert opinion on economic damages was harmless or substantially justified. First, Defendants were unreasonably and unfairly surprised by the addition of this opinion. Prior to Defendants' receipt of Smolarski's report, they had no reason to believe that any expert would opine on economic damages and that Fields would seek to introduce that opinion at trial. Second, Defendants cannot reasonably be expected to cure the surprise. In order to do so, they would need to retain their own expert on economic damages and would likely have to conduct additional fact discovery on economic damages for their new expert to review. It is not reasonable to ask Defendants to undertake that effort and to incur the related expenses at this late stage of the proceedings. Third, it is not clear that presenting the evidence would disrupt the trial. Fourth, the evidence is not essential to Fields' case. She can explain to the jury in lay terms that she can no longer earn a living due to the physical and cognitive limitations she now faces as a result of her injury. Finally (and perhaps most importantly), Fields has not offered any reasonable explanation for her failure to timely disclose an economic damages expert opinion.

9

Smolarski to provide in place of Dr. Ancell. Indeed, as described above, Smolarski explained that his functional/work capacity evaluation forms part of the "foundation" of his vocational rehabilitation opinions. (Smolarski Report, ECF No. 150-2, PageID.4321.) And Smolarski explained in his vocational assessment that his analysis of Fields' physical limitations is "based upon the results of the functional capacity evaluation." (*Id.*, PageID.4314.) Thus, the Court views Smolarski's "functional work/capacity evaluation" not as a standalone assessment, but, instead, as a tool that he used to reach his opinions regarding Fields' vocational rehabilitation, which were of course the very opinions that the Court authorized him to offer in place of Dr. Ancell.

Defendants counter that "[Dr.] Ancell, the vocational expert originally chose[n] by the [Fields], did not need any functional capacity evaluation […] to complete his report or opinions." (Reply, ECF No. 152, PageID.4500.) But the fact that Dr. Ancell employed a different methodology to assess Fields' vocational rehabilitation does not mean that Smolarski materially exceeded the scope of Dr. Ancell's opinions. The two simply used different approaches to reach their ultimate conclusions about Fields' vocational rehabilitation prospects.

For all of these reasons, the Court declines to exclude Smolarski from offering functional/work capacity opinions on the ground that those opinions exceed the scope of Dr. Ancell's opinions and/or were not timely disclosed.

III

A

The Court next turns to whether it should exclude Smolarski's vocational rehabilitation and functional/work capacity opinions under Federal Rule of Evidence 702.[4] That rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, district courts have "broad discretion as [ ] 'gatekeeper[s]' to determine the admissibility" of expert testimony. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). In assessing proposed expert testimony, a district court must "determine whether [the] evidence 'both rests on a reliable foundation and is relevant to the task at hand.'" *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d

---

[4] Since the Court has concluded that Smolarski's economic damages opinions must be excluded for the reasons explained above, the Court need not, and does not, evaluate whether those opinions should be excluded under FRE 702.

11

521, 527 (6th. Cir. 2012) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

In *Daubert*, the Supreme Court stressed that there is no "definitive checklist or test" that a district court must apply when considering the reliability of expert testimony. *Daubert*, 509 U.S. at 590. Yet, at the same time, the Supreme Court identified "several factors that a district court should consider when evaluating the scientific validity [and reliability] of expert testimony, notably: the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community." *Pride*, 218 F.3d at 577 (citing *Daubert*, 509 U.S. at 593-94).

The *Daubert* "factors, while perhaps most apt in evaluating a purely scientific discipline, can also apply in evaluating non-scientific fields that are 'technical' or 'specialized' in nature." *United States v. Mallory*, 902 F.3d 584, 593 (6th Cir. 2018) (quoting *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-53 (1999)). However, these factors may not be useful in evaluating the reliability of some types of expert testimony, and thus applying the "factors [is] not mandatory in every case." *Id.*

Finally, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit evidence that is connected to existing data by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In the end, "[t]he questions of what factors to apply and what conclusions to draw about an expert's reliability are

12

entrusted to the district court's discretion." *Mallory*, 902 F.2d at 593; *see also Kuhmo Tire*, 526 U.S. at 141 ("[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.").

**B**

Defendants contend that "Smolarski's testimony does not meet [the] requisite threshold" established by *Daubert* and Rule 702. The Court disagrees.

Defendants first argue that Smolarski's vocational rehabilitation opinions must be excluded because they are not based on "sufficient facts or data." (Mot., ECF No. 150, PageID.4267.) Defendants highlight that Smolarski reviewed "no medical records or data whatsoever to formulate his opinion." (*Id.*, PageID.4261.) And they insist that "**the only 'objective' information and data** that Mr. Smolarski relied on to determine the limitations of the Plaintiff" was answers provided by Dr. Jennings (Fields' primary care doctor) to a questionnaire prepared by Smolarski." (*Id.*, PageID.4270; emphasis in original.)

Defendants are incorrect. Contrary to their contention, Smolarski relied on objective data beyond Dr. Jennings' answers on the questionnaire. As Smolarski's report details, he also relied on the results of a number of cognitive aptitude tests and physical capacity assessments that he administered to Fields. (*See* Smolarski Report, ECF No. 150-2, PageID.4311-4315.) The aptitude tests were designed to measure a number of relevant cognitive attributes, such as Fields' reading comprehension, object

13

and spatial perception, mathematic competency, and spelling. (*See id.*, PageID.4311-4312.) And the physical assessments were designed to assess Fields' ability to withstand the physical demands of various jobs, testing her capacity to perform certain vital movements and to withstand certain environmental conditions. (*See id.*, PageID.4314-4315.) As Smolarski explained in his report, he relied on all of these clinical assessments, as well as Dr. Jennings' questionnaire answers and Fields' own assessment of her pain, to reach his conclusion that Fields "has access to 0 occupations" as a result of her injuries. (*Id.*, PageID.4316.)

Defendants next argue that Smolarski's methodology was unreliable because, unlike Dr. Ancell, he did not review Fields' medical records. While it is true that Dr. Ancell conducted a much more searching review of Fields' medical records, Smolarski personally administered a series of physical and cognitive tests that Dr. Ancell did not. (*See id.*) Indeed, Smolarski's methodology was *more* extensive than Dr. Ancell's in this regard. Defendants have not persuaded the Court that Smolarski's methods for assessing Fields' vocational capacity were unreliable.

The Court has carefully reviewed Smolarski's vocational rehabilitation and functional/work capacity evaluations and opinions, and the Court concludes that Smolarski utilized sufficiently reliable methods and that he based his conclusions on sufficient data. While Defendants have identified a number of areas in which Smolarski could have performed a more thorough analysis and/or relied upon additional data, those imperfections do not require exclusion of his vocational rehabilitation and

functional/work capacity opinions. Defendants may thoroughly explore these issues on cross-examination of Smolarski.

## C

Finally, Defendants argue that Smolarski's opinions are inadmissible because they are unnecessary, as "any lay juror could understand the facts cited by Mr. Smolarski without the assistance of expert testimony." (Mot., ECF No. 150, PageID.4275.) In support of this contention, they reiterate that "Smolarski relies primarily upon some of the opinions of Dr. Jennings and [Fields] – both of whom will testify regarding the [Fields'] medical conditions and alleged functional limitations." (*Id.*) But, as explained above, Smolarski relied on more than Dr. Jennings' assessment and Fields' own reports of her condition. Smolarski also relied on a battery of cognitive and physical assessments that he personally administered as an expert in vocational rehabilitation. A jury could reasonably benefit from Smolarski's "specialized knowledge" regarding what these various tests revealed about Fields' vocational profile.

## IV

For the reasons explained above, the Court concludes that Smolarski's expert opinions regarding Fields' economic damages should be excluded, but that his expert opinions regarding the vocational evaluation and the functional capacity evaluation that he conducted are admissible. Defendants' motion to exclude Smolarski's expert

opinion testimony (ECF No. 150) is therefore **GRANTED** in part and **DENIED** in part as set forth above.

    **IT IS SO ORDERED.**

s/Matthew F. Leitman<br>
MATTHEW F. LEITMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: October 19, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 19, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan<br>
Case Manager<br>
(313) 234-5126